ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| MARIANELA NARVÁEZ CINTRÓN<br><br>Apelada<br><br>v.<br><br>LA SUCESIÓN DE ÁNGEL MANUEL CHINEA OLIVERAS<br><br>Apelante | KLAN202400129 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>D AC2012-3318<br>D AC2012-3530<br><br>Sobre:<br>División de Herencia |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de mayo de 2024.

Comparece el señor Manuel Javier Chinea Narváez (en adelante, señor Manuel Chinea), Zavier Chinea Rosario (en adelante, Zavier Chinea) y Zulimar Chinea Rosario (en adelante, Zulimar Chinea) (en conjunto, parte apelante) mediante un recurso de *Apelación* para solicitarnos la revisión de la *Sentencia* emitida en el caso D AC2012-3318, el 16 de noviembre de 2023 y notificada el 6 de diciembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI).[1] En dicha *Sentencia*, el TPI aprobó en su totalidad el Cuaderno Particional,[2] presentado por el Contador Partidor, ordenó la división y partición de los bienes del caudal objeto del caso del título de conformidad a lo allí dispuesto y declaró No Ha Lugar la solicitud para que se destituyera a la señora Marianela Narváez Cintrón (en adelante, señora Narváez Cintrón y/o Albacea y/o apelada) como albacea y la liquidación de Vivó Auto Parts, presentada por el apelante, señor Manuel Chinea .

---

[1] Apéndice del recurso, a la pág. 772.
[2] *Id.*, a las págs. 385-398.

Número Identificador

SEN2024_____

Por los fundamentos que expondremos a continuación, se *revoca* la *Sentencia* la apelada. Se devuelve el caso para que el Contador-Partidor/Comisionado Especial celebre una vista y producto de esta, emita un informe al foro primario que cumpla con lo requerido en la *Orden* del 14 de marzo de 2016, y con la Regla 41.5 de las Reglas de Procedimiento Civil. Además, en dicha vista el Contador-Partidor/Comisionado Especial dirimirá las controversias relacionadas a la solicitud de remoción de la señora Narváez Cintrón del cargo de Albacea.

**I**

El causante Ángel Manuel Chinea Oliveras (en adelante, Causante) falleció el 15 de marzo de 2012, habiendo otorgado Testamento Abierto[3] mediante la escritura número 10, del 12 de noviembre de 2008.[4] La escritura fue inscrita en el Registro de Testamentos bajo el asiento número 383-052.[5] En dicho Testamento, el Causante, en el tercio de legitima estricta instituyó, nombró y declaró herederos en partes iguales a sus dos (2) hijos, el señor Manuel Chinea y José Ángel Chinea Narváez (en adelante, José Chinea).[6] De igual forma, el Causante, en el tercio de mejora instituyó, nombró y declaró herederos en partes iguales a sus nietos Jeremy Alexander Chinea Rivera (en adelante, Jeremy Chinea), Gabriel Jesús Chinea Rivera (en adelante, Gabriel Chinea), Zavier Chinea y Zulimar Chinea.[7] Por su parte, el Causante, en el tercio de libre disposición instituyó, nombró y declaró heredera a su esposa la señora Narváez Cintrón.[8]

Por otro lado, en cuanto a la cuota viudal usufructuaria, el Causante dispuso que la misma le fuera pagada a la señora Narváez

---

[3] *Id.*, a las págs. 176-181.
[4] Recurso de Apelación, a la pág. 2. Apéndice del recurso, a la pág. 2.
[5] Recurso de Apelación, *Id.* Apéndice del recurso, a la pág. 7.
[6] Recurso de Apelación*, Id.* Apéndice del recurso, a la pág. 2.
[7] *Id.*
[8] *Id.*

Cintrón del tercio destinado a mejora.[9] En lo que respecta a la administración del caudal, el Causante nombró Albacea Testamentaria a la señora Narváez Cintrón sin remuneración y sin la obligación de prestar fianza, concediéndole las facultades necesarias para cumplir con el mandato contenido en el Testamento por el tiempo que fuese necesario.[10] Además, facultó a la Albacea para vender, hipotecar, arrendar o enajenar los bienes inmuebles, derecho reales, bienes muebles, acciones o valores que fueran parte de la herencia, para pagar las deudas que hubiere y cobrar las cuentas que le adeudaran al Causante.[11] Añadió, que prohibió colacionar cualquier donación hecha.[12]

El 14 de noviembre de 2012, la señora Narváez Cintrón presentó la *Demanda* en el caso D AC2012-3318, sobre división de herencia.[13] En la *Demanda,* expuso que el Causante dejó varios bienes muebles e inmuebles, tales como propiedades, negocios en marcha, vehículos, cuentas de ahorros, crédito y negocios de inversiones en marcha. Además, señaló que el Causante dejó una participación alícuota en un terreno inmueble ubicado en el Barrio Guadiana del Municipio de Naranjito, participación que, en unión a sus hermanos, es el producto de la herencia que dejaron sus padres Don Pedro Chinea y Eleuteria Oliveras. También, indicó que el Causante dejó deudas pendientes a liquidar, tanto como hipotecas y préstamos. A esos efectos, alegó que había seguido pagando las deudas del caudal, inclusive que, con dinero privativo de ésta, había efectuado pagos a las hipotecas y préstamos que estaban activos. Solicitó que se liquidase la herencia del Causante y la Sociedad Legal de Gananciales (en adelante, SLG) que esta tuvo con el Causante.

---

[9] Recurso de Apelación, *Id.* Apéndice del recurso, a la pág. 7.
[10] Recurso de Apelación*, Id.* Apéndice del recurso, a las págs. 2 y 7.
[11] Recurso de Apelación*,* a la pág. 3. Apéndice del recurso, a la pág. 19.
[12] *Id.*
[13] Apéndice del recurso, a las págs. 1-5.

El 4 de diciembre de 2012, el señor Manuel Chinea, por sí y en representación de sus dos (2) hijos Zavier Chinea y Zulimar Chinea, presentó una *Demanda* de división de comunidad hereditaria testada en el caso D AC2012-3530.[14] Los menores de edad en cuestión al momento de la presentación de esta *Demanda* tenían doce (12) y nueve (9) años, respectivamente. Respecto a los hijos de su hermano José Chinea, expuso que, al momento de la radicación de esta *Demanda,* Jeremy Chinea tenía diecisiete (17) años y Gabriel Chinea once (11) años. Alegó que la señora Narváez Cintrón no había realizado los actos necesarios para legalizar y obtener del TPI la autoridad requerida para llevar a cabo los actos de administración de la herencia, por lo que estaba haciéndolo de forma ilegal y contraria a derecho, sin tan siquiera haber citado para la lectura del Testamento.[15] Añadió que, la señora Narváez Cintrón había evadido su obligación de rendir informes financieros de los negocios que llevaba a cabo y demás actividades que realizaba a nombre de la Sucesión contrario a lo exigido por la Ley de Procedimientos Legales Especiales.[16] Además, expuso que, tampoco se había formalizado un inventario de los bienes que componen el caudal, bajo juramento. Solicitó que se ordenara la división de la comunidad hereditaria, y se requiriera el inventario, avalúo, liquidación y pago del caudal hereditario en la proporción correspondiente.

El 27 de diciembre de 2012, el TPI emitió una *Orden* en la cual le requirió a las partes presentar un Informe en conjunto para el Manejo del Caso y un Cuaderno Particional.[17]

---

[14] Apéndice del recurso, a las págs. 6-8.
[15] De los autos ante nuestra consideración se desprende que en el caso D JV2013-0510, el 5 de abril de 2013, el TPI emitió una *Resolución* mediante la cual autorizó a la señora Narváez Cintrón a ejercitar todos y cada uno de los poderes otorgados y enumerados en la misma, en su capacidad de Albacea de los bienes de la herencia del Causante. Apéndice del recurso, a las págs. 75-79.
[16] Ley de Procedimientos Legales Especiales, Títulos XVI y XVIII del Código de Enjuiciamiento Civil de Puerto Rico, Edición de 1933, según enmendado, 32 LPRA § 2511, Art. 597.
[17] Apéndice del recurso, a la pág. 11.

El 2 de enero de 2013, el señor Manuel Chinea, por sí y representación de sus dos (2) hijos, presentó *Contestación a Demanda* en el caso D AC2012-3318.[18] Entre otras cosas, en el acápite nueve (9) señaló que la señora Narváez Cintrón no había solicitado la expedición de las Cartas Testamentarias. Además, presentó una *Reconvención* y *Demanda Contra Coparte*. Esbozó que, en el Testamento, el Causante dispuso que mientras la señora Narváez Cintrón viviera tendría derecho a ocupar la residencia que constituyó el hogar matrimonial ubicado en la Calle 2, #320, Urb. Hermanas Dávila, Bayamón, Puerto Rico, siempre y cuando no afectara ni alcanzara los bienes que constituyen la legítima de los herederos. A la luz de lo anterior, añadió que el Causante dispuso que, al partir y dividir los bienes del caudal, deseaba que la señora Narváez Cintrón recibiera en dicha partición la titularidad del bien inmueble antes mencionado. Ahora bien, expuso que el Causante dispuso que su participación en el inmueble ubicado en la Calle 2, #319, Urb. Hermanas Dávila, Bayamón, Puerto Rico, al momento de la partición y división de la herencia le fuese adjudicado a este.[19]

El 5 de febrero de 2013, el TPI emitió una *Orden* declarando Ha Lugar una moción solicitando tasar los bienes inmuebles pertenecientes a la comunidad hereditaria.[20] Como parte de la orden, se tasarían cuatro (4) bienes inmuebles. Conviene señalar, que se desprende de los autos que, el caso D AC2012-3530 se consolidó con el caso D AC2012-3318, por ser el de mayor antigüedad.

El 22 de abril de 2013, según se desprende de los autos, se llevó a cabo un descubrimiento de prueba en el cual se le tomó una deposición a la señora Narváez Cintrón.[21]

---

[18] *Id.*, a las págs. 14-21.
[19] *Id.*, a la pág. 138.
[20] *Id.*, a la pág. 22.
[21] Recurso de Apelación, a la pág. 10.

El 20 de mayo de 2013, el señor Manuel Chinea, por sí y en representación de sus dos (2) hijos, presentó una *Moción en Cumplimiento de Orden*.[22] Indicó que no se le había provisto el informe de operaciones de Vivó Auto Parts, negocio de piezas de automóvil de carácter ganancial. Señaló que se le había entregado el inventario de piezas, el cual presentaba discrepancias respecto a su valor, y que faltaba el detalle de los demás bienes del caudal. Solicitó que se nombrara un tasador perito en operaciones para que tasara la operación comercial de Vivó Auto Parts.

El 22 de mayo de 2013, el TPI emitió una *Orden* declarando Con Lugar el realizar un inventario físico del negocio conocido como Vivó Auto Parts.[23] Ordenó que el inventario debía realizarse para la fecha en que se sometiera el Cuaderno Particional provisional.

El 27 de junio de 2013, la señora Narváez Cintrón sometió un Cuaderno Particional Provisional.[24] El 27 de septiembre de 2013, el TPI volvió a emitir una *Orden* para que se realizara el inventario físico del negocio Vivó Auto Parts por medio del Grupo Inventario dirigido por el señor Carlos Monge.[25]

El 7 de octubre de 2013, se celebró una vista y de la *Minuta* se desprende que el TPI le dio fecha a la señora Narváez Cintrón para que cumpliera con la presentación de los informes trimestrales de la Albacea, ya que era deber de esta parte rendir dichos informes.[26]

El 16 de octubre de 2013, el señor Manuel Chinea, por sí y en representación de sus dos (2) hijos, presentó una *Moción en Oposición a "Moción en Cumplimiento de Orden" Presentada por la Demandante el 11 de octubre de 2013*.[27] Alegó que, la Planilla de Contribución sobre Ingresos de Sucesiones y Fideicomisos

---

[22] Apéndice del recurso, a las págs. 71-73.
[23] *Id.,* a la pág. 23.
[24] Recurso de Apelación, 9. Apéndice del recurso, a las págs. 24-30.
[25] Apéndice del recurso, a las págs. 31-33.
[26] *Id.,* a las págs. 34-35.
[27] *Id.,* a las págs. 36-40.

presentada por la señora Narváez Cintrón, no cumplía con varias disposiciones de ley. En específico, sobre la Planilla señaló que: (i) utilizó el número de seguro social del Causante, en lugar del número de seguro social de la Sucesión emitido por el Internal Revenue Service (por sus siglas, IRS); (ii) tampoco incluyó los ingresos de la Sucesión por concepto de cánones de arrendamiento de un edificio con apartamentos de alquiler. Respecto al Estado de Situación, dispuso que el mismo incumplía, ya que no correspondía al ingreso de la Sucesión, sino al de la señora Narváez Cintrón. Además, expuso que daba la impresión de que la señora Narváez Cintrón estaba operando el negocio como si fuera uno de su propiedad. En lo concerniente a los Estados de Cuenta Trimestrales, alegó que no estaba firmado bajo juramento por la Albacea, ni expresaba los demás ingresos de la Sucesión, sino solo los ingresos y gastos semestrales del negocio.

El 27 de noviembre de 2013, el señor Manuel Chinea y su esposa la señora Zuheil Rosario Vélez (en adelante, señora Rosario Vélez), reconvenida sin ser parte en el caso D AC2012-3530 y sin someterse a la jurisdicción del Tribunal, presentaron una *Réplica a Reconvención en cuanto a Manuel Chinea Narváez / Moción de Desestimación en cuanto a Zuheil Rosario Vélez.*[28]

El 19 de mayo de 2014, el señor Manuel Chinea, por sí y en representación de sus dos (2) hijos, presentó una *Moción Informativa en Cumplimiento de Orden.*[29] Ahí, señaló que todavía desconocía si se había realizado la tasación del inmueble localizado en el Municipio Naranjito, cuál era su valor y en qué estado se encontraba. Solicitó que, dado a los incumplimientos en el ejercicio del cargo de Albacea, la señora Narváez Cintrón fuera removida. Consecuentemente, solicitó que en sustitución de la Albacea se

---

[28] Apéndice del recurso, a las págs. 44-46.
[29] *Id.,* a las págs. 107-113.

nombrara un Administrador Judicial para que se incautaran todos los bienes de la Sucesión y se administraran hasta que se liquidara la herencia.

El 23 de mayo de 2014, la señora Narváez Cintrón sometió ante el Tribunal un Cuaderno Particional final.[30] En esa misma fecha, la señora Narváez Cintrón presentó también una *Réplica a Moción en Cumplimiento de Orden*.[31] Alegó que sometió un Primer Informe el 5 de noviembre de 2013. Añadió que, el 15 de mayo de 2014, sometió un Segundo Informe que comprendió todas las operaciones del negocio Vivó Auto Parts al cierre del 30 de marzo de 2014. Solicitó que no se acogiera la petición del señor Manuel Chinea respecto a que se nombrara un Administrador Judicial, en consecuencia, que mantuviera a la señora Narváez Cintrón como Albacea del negocio Vivó Auto Parts.

El 27 de mayo 2014, se celebró una vista. En la *Minuta*, el Tribunal expresó que la Albacea debía entregar copia de la Planilla de Caudal Relicto ponchada por el Departamento de Hacienda.[32] Además, el Tribunal hizo constar que la Albacea no había provisto los informes mensuales y trimestrales ordenados. Al día siguiente, la señora Narváez Cintrón presentó una *Moción en Cumplimiento de Orden*.[33] Alegó que ya le había entregado a la otra parte la Planilla de Caudal Relicto junto con la Planilla de Hacienda, Planillas del Centro de Recaudos de Impuestos Municipales (por sus siglas, CRIM), copia de la póliza de seguro de vida del Causante, evidencias de pagos, evidencias de depósitos bancarios, entre otros.

Luego, el 14 de marzo de 2016, el TPI emitió una *Orden Designando Contador-Partidor / Comisionado Especial*.[34] A raíz de ello, designó como Contador-Partidor al abogado y CPA Néstor

---

[30] Recurso de Apelación, a la pág.10. Apéndice del recurso, a las págs. 47-58.
[31] Apéndice del recurso, a las págs. 59-62 y 63-70.
[32] *Id.,* a las págs. 101-104.
[33] *Id.,* a las págs. 86-100.
[34] *Id.,* a las págs. 114-119.

Manuel Torres Torres. Además, indicó que el Contador-Partidor actuaría también como Comisionado Especial, ejercitando todos los poderes y facultades que indica la Regla 41.3 de las Reglas de Procedimiento Civil.[35] Señaló que, una vez sometido el caso por ambas partes, el Contador-Partidor / Comisionado Especial presentaría un informe escrito en el que consignaría sus determinaciones de hechos y conclusiones de derecho conforme a la Regla 41.5 de las Reglas de Procedimiento Civil.[36]

El 17 de noviembre de 2020, el CPA Eduardo R. Jiménez Viñas (en adelante, CPA Jiménez Viñas), quien sustituyó al CPA Torres como Contador Partidor, presentó una *Moción Sometiendo Cuaderno Particional.*[37] Expuso que el Causante contrajo matrimonio con la señora Narváez Cintrón el 3 de agosto de 1968, y que, en ausencia de capitulaciones, se presume se casaron bajo SLG. Señaló que, el 31 de marzo de 1994, el Causante y la señora Narváez Cintrón adquirieron el negocio Vivó Auto Parts.[38] Añadió que, de acuerdo con la señora Narváez Cintrón y el CPA Carlos A. Nieves, el negocio siempre había sido operado como individuo y no como corporación. Explicó que entró al portal del Departamento de Estado y la corporación Vivó Auto Parts se encontraba cancelada.[39] Indicó que, la Planilla del Caudal Relicto del Causante incluía:

- Hermanas Dávila Calle 2 #319[40]
- Hermanas Dávila Calle 2 #320 (Residencia de la señora Narváez Cintrón)[41]

---

[35] 32 LPRA Ap. V, R. 41.3.
[36] 32 LPRA Ap. V, R. 41.5.
[37] Recurso de Apelación, a la pág.18. Apéndice del recurso, a las págs. 137-369.
[38] Apéndice del recurso, a las págs. 172-174.
[39] *Id.,* a las págs. 278-280.
[40] La Albacea ha realizado 17 pagos de las contribuciones territoriales por la cantidad $635.44 ascendente a la cantidad de $10,802.48, Apéndice del recurso, a las págs. 343-344. La Escritura de Compraventa se encuentra en el Apéndice de la parte apelante, a las págs. 183-192. La tasación de dicho bien inmueble se encuentra en el Apéndice del recurso, a las págs. 194-203 y 580-595.
[41] La Albacea ha realizado 17 pagos de las contribuciones territoriales por la cantidad $56.05 ascendente a la cantidad de $952.85, Apéndice del recurso, a las págs. 343-344. La Escritura de Compraventa Asumiendo Hipoteca se encuentra en el Apéndice del recurso, a las págs. 205-210. La tasación de dicho bien inmueble se encuentra en el Apéndice del recurso, a las págs. 210-219 y 596-.

- Villa Contesa Ave. Los Millones #DD-19 (Alberga las operaciones de Vivó Auto Parts)[42]
- Villa Contesa Ave. Los Millones #DD-18 (edificio de alquiler)[43]
- Terreno localizado en Barrio Guardiana de Naranjito (participación hereditaria del Causante en el caudal relicto de su padre
- Inventario Vivó Auto Parts $78,200.00

Por su parte, las cuentas bancarias existentes eran:

- BBVA #070-3220597078 / CD - $215,000.00
- BPPR #131-720589 / Multicuenta Popular – $2,879.22
- BPPR #052-847462 / Vivó Auto Parts
- PR Federal Credit Union (El Causante era empleado de Puerto Rico Telephone, Co. (por sus siglas, PRTCo.), empresa de la cual se retiró solicitando sus fondos en pensión del pago total. Dichos fondos se depositaron en Cooperativa de Empleados de la Telefónica, que luego se convirtió en Federal Credit Union.)
- BBVA #0034-1370400913

Entre las cuentas a cobrar se encontraban: (i) Smart Food's Corp. de $59,000.00 dólares y (ii) Smart Outdoor Media, Inc. de $327,000.00 dólares. Respecto a los vehículos había tres (3): (i) Ford Expedition del 2002 de $8,000.00 dólares;[44] (ii) Grand Cherokee del 1998 de $3,000.00 dólares (utilizada por la señora Narváez Cintrón);[45] y, (iii) Jeep Comanche del 1988 de $1,500.00 dólares.[46] En lo concerniente a deudas, mencionó dos (2): (i) hipoteca sobre inmueble / BPPR #07-100-101-9112889 con un balance de $119,494.00 dólares; y, (ii) Scotia Bank / Préstamo comercial #1600467854 con un balance de $87,439.00 dólares. Expresó que, el producto de los seguros de vida (Plan de Retiro para Empleados Asalariados de PRTCo. por la cantidad de $16,500.00 dólares[47] y

---

[42] La Albacea ha realizado 17 pagos de las contribuciones territoriales por la cantidad $631.04 ascendente a la cantidad de $10,727.68, Apéndice del recurso, a las págs. 343-344. La Escritura de Compraventa Asumiendo Hipoteca se encuentra en el Apéndice del recurso, a las págs. 221-228. La tasación de dicho bien inmueble se encuentra en el Apéndice del recurso, a las págs. 230-247 y 501-579.

[43] La Albacea ha realizado 17 pagos de las contribuciones territoriales por la cantidad $702.95 ascendente a la cantidad de $11,950.15, Apéndice del recurso, a las págs. 343-344. La Escritura de Compraventa se encuentra en el Apéndice del recurso a las págs. 249-254. La tasación de dicho bien inmueble se encuentra en el Apéndice del recurso, a las págs. 256-272 y 424-500.

[44] Apéndice del recurso, a las págs. 299-301.

[45] *Id.,* a las págs. 303-305.

[46] *Id.,* a las págs. 307-309.

[47] *Id.,* a la pág. 334.

Triple-S Vida por la cantidad de $401,257.95 dólares[48] recibidos por la señora Narváez Cintrón, le proveyeron la capacidad económica para adquirir las participaciones de los otros herederos. Concerniente a la Planilla del Caudal Relicto, dispuso que el Secretario de Hacienda emitió el Relevo de Herencia el 19 de marzo de 2015.[49]

El 25 de mayo de 2022, el señor Manuel Chinea, por sí y por sus dos (2) hijos presentó una *Tercera Moción Solicitando la Liquidación del Negocio Vivó Auto Parts y otros Remedios*.[50] Expuso que, los informes mensuales entregados de las ventas Vivó Auto Parts no eran reconciliables. También, señaló que como la Albacea había provisto información imprecisa sobre el inventario de Vivó Auto Parts, no habían podido culminar la valoración del inventario de la Sucesión. Mencionó que el informe del Contador-Partidor reflejaba que el negocio de Vivó Auto Parts era uno perdidoso o casi perdidoso que no generaba ningún beneficio para el caudal. Así, las cosas, solicitó que se ordenara el cierre y liquidación de Vivó Auto Parts, de forma que el producto pudiera ser consignado en lo que se determinaban las pérdidas atribuibles a la señora Narváez Cintrón y el importe que se debía regresar al caudal. Además, solicitó que se le ordenara a la señora Narváez Cintrón: (i) arrendar todos los inmuebles del caudal, a excepción de su residencia; (ii) entregar todos los informes trimestrales que debe desde el 2018, hasta el 2022; y, (iii) proveer el Registro de Comerciante del alquiler de los bienes de la Sucesión y la cuenta comercial en la que depositara el dinero de la renta.

El 19 de diciembre de 2022, el señor Manuel Chinea, por sí y en representación de sus hijos, presentó una *Segunda Moción*

---

[48] *Id.,* a las págs. 336-339.
[49] *Id.,* a la pág. 369.
[50] *Id.,* a las págs. 370-374.

*Solicitando Remedios y en Reconsideración en Cuanto al Informe de Valoración del Negocio.*[51] Señaló que del informe del Contador-Partidor se desprendía que, para los meses de septiembre a noviembre de 2022, había surgido una baja sustancial en las ventas de Vivó Auto Parts. Destacó que, el Contador-Partidor, como estaba investido del cargo de Comisionado Especial, debía celebrar una vista para que las partes presentaran su evidencia, entre otras cosas, en cuanto a la valoración del negocio Vivó Auto Parts. Indicó que a su juicio los informes preliminares, estados trimestrales y el Cuaderno Particional no incluyeron los ingresos por renta de los siguientes bienes inmuebles del caudal:

- Beauty/Tati: $300.00 mensuales (suscrito el 2 de enero de 2009)
- Health Food/Lina: $325.00 mensuales (suscrito el 19 de abril de 2017)
- Casa Bendición: $550.00 mensuales (suscrito el 11 de abril de 2018)
- Health Food/Diana: $350.00 mensuales (suscrito el 4 de abril de 2019)
- Apartamento: $500.00 mensuales (suscrito el 13 de agosto de 2018)

De igual forma, respecto a dichos bienes inmuebles antes mencionados hizo hincapié que le faltaban los contratos de los años 2012 al 2016. Se reservó el derecho a impugnar el informe que rindiera el Contador-Partidor.

El 14 de marzo de 2023, el Contador Partidor presentó una *Moción Sometiendo Cuaderno Particional Final.*[52] En dicha moción, señaló que existían varias partidas que merecían ser reconsideradas. Respecto a un préstamo que el Causante le otorgó a el señor Sánchez Core ascendente a $386,345.00 dólares, expresó que la misma tenía más de diez (10) años y que le parecía incobrable o a lo sumo se podría cobrar un diez por ciento (10%), por lo que no merecía consideración alguna para efectos de la partición.[53] En lo

---

[51] *Id.,* a las págs. 375-384.
[52] *Id.,* a las págs. 385-398.
[53] *Id.,* a las págs. 393-394 y 700-701.

concerniente al valor comercial de Vivó Auto Parts, indicó que el inventario nunca se realizó. Sobre la cuenta bancaria BBVA #070-3220597078 explicó que en esta se depositaron los fondos de retiro del Causante ascendente a $62,468.00 dólares. Añadió que, a la fecha del fallecimiento del Causante, dicha cuenta reflejaba un balance de $215,000.00 dólares, cuyo diferencial consideró ganancial.[54]

El 15 de mayo de 2023, el señor Manuel Chinea, por sí y en representación de sus dos (2) hijos, presentó una *Moción en Oposición al Informe Final del Contador Partidor*.[55] Esbozó que, el Cuaderno Particional final solamente incluyó los valores actuales de los activos sin mencionar los valores al momento de fallecimiento del Causante ni la liquidación de la SLG en aquel momento. También, señaló que el Cuaderno Particional sometido en el 2020, tampoco cumplía, ya que no se estableció el inventario de la SLG, las deudas del caudal ni el valor de los inmuebles a la muerte del Causante, como tampoco se fijaron las responsabilidades atribuibles al Causante y a la señora Narváez Cintrón. Señaló que, existía una cuenta del BPPR creada por la señora Narváez Cintrón a la que le depositó fondos luego de la muerte del Causante, pero antes de esta haber recibido las cantidades por los seguros de vida, y que esa cuenta no aparecía reflejada en el Cuaderno Particional como un activo. Añadió que, no se sostenía que la señora Narváez Cintrón cubriese de su peculio con su pensión de Seguro Social los pagos del CRIM e hipoteca, entre otros. Destacó que había unos créditos solicitados que no correspondían a la señora Narváez Cintrón, ya que los pagos se realizaron a través de una cuenta común de la SLG.

---

[54] El diferencial ganancial era $76,255.00 dólares, representando un 35% del total consignado $215,275.81 dólares. Dichos fondos consignados han devengado intereses por la cantidad de $9,561.67 hasta el 31 de diciembre de 2022. En esa misma fecha, quedaba un remanente de $145,957.83 dólares de los fondos consignados, de los cuales determinó que $79,612.58 dólares le pertenecen a la señora Narváez Cintrón.
[55] Apéndice del recurso, a las págs. 399-413.

Expresó que, los inventarios provistos por el Contador Partidor no cumplían con el Artículo 570 del Código de Enjuiciamiento Civil,[56] pues carecían de juramento. Señaló que era necesario la celebración de una vista en su fondo para que la Albacea pudiese explicar la pérdida de valor que tuvo el negocio Vivó Auto Parts. En relación con el negocio, expuso que el Contador Partidor no reconoció que la Albacea recibiera un salario proveniente del negocio Vivó Auto Parts, al igual que el pago de su guagua Mercedes Benz y el pago de sus gastos personales. Alegó que se había dejado fuera del Cuaderno Particional los ingresos por renta de los cinco (5) bienes inmuebles del caudal. Adicional, mencionó que en el Cuaderno Particional se indicó que la Albacea compró las participaciones de ciertos herederos, entre ellos, José Chinea, Jeremy Chinea y Gabriel Chinea, pero que no existía evidencia al respecto. A tenor con la Regla 41.5 (c) de las Reglas de Procedimiento Civil, solicitó que se señalara vista para discutir el informe.[57]

En el mes de junio de 2023, el Contador Partidor presentó *Moción Refutando Objeciones de la Parte Demandada.*[58] Indicó que, los gastos operacionales de Vivó Auto Parts se cubrían con fondos de las cuentas de dicho negocio, no con el seguro social de la señora Narváez Cintrón. En lo concerniente a la deuda del señor Sánchez Core, indicó que entendía que era incobrable desde el 2011. Por su parte, en lo que respecta al negocio Vivó Auto Parts, expresó que la parte apelante no sometió objeciones al informe del CPA Jiménez Viñas. Añadió que las planillas de contribución sobre ingresos no habían sido objetadas por el Secretario de Hacienda. Por su parte, el 10 de julio de 2023, el señor Manuel Chinea, por sí y en representación de sus dos (2) hijos, presentó una *Réplica a la*

[56] 32 LPRA § 2403, Art. 570.
[57] 32 LPRA Ap. V, R. 41.5 (c).
[58] Apéndice del recurso, a las págs. 728-745.

*"Moción Refutando Objeciones de la Parte Demandada"* Presentada por el Contador Partidor.[59] Alegó que sí refutó el informe del CPA Jiménez Viñas el 19 de diciembre de 2022.

De ahí, el 16 de noviembre de 2023, notificada el 6 de diciembre de 2023, el TPI emitió la *Sentencia* objeto de revisión.[60] En dicha *Sentencia* el foro primario dispuso lo siguiente:

> [...] este tribunal DA POR SOMETIDO Y APROBADO EL CUADERNO PARTICIONAL, en su totalidad, según presentado por el contador partidor.
> En consecuencia, se ordena la división y partición de los bienes del caudal objeto de este caso de conformidad a lo dispuesto por el Contador Partidor en dicho cuaderno particional.
> Se declara No Ha Lugar la solicitud del codemandado Manuel Chinea para la destitución de la demandante como albacea y liquidación del negocio Vivo Auto Parts.[61]

En desacuerdo, el 21 de diciembre de 2023, la parte apelante presentó una *Moción de Reconsideración de Sentencia,* en la cual también solicitó determinaciones de hecho iniciales.[62] Recalcó que el Cuaderno Particional aprobado no reflejaba la realidad del caudal en cuanto al inventario. Hizo hincapié en que existían controversias que debieron resolverse en un juicio plenario sobre los créditos y débitos cargados y la sana administración del activo común. Expresó que era notable la pobre administración y la devaluación o pérdida del caudal. Así, las cosas, solicitó que se dejara sin efecto la *Sentencia* dictada y se ordenara la celebración de un juicio en su fondo; o en su defecto, se dictara sentencia enmendada acogiendo las once (11) determinaciones de hechos propuestas y se sometiera un cuaderno particional enmendado reconociendo las partidas exclusivas. El 9 de enero de 2024, notificada el 12 de enero de 2024, el TPI emitió una *Resolución* declarando No Ha Lugar la solicitud de reconsideración y de determinaciones de hecho iniciales.[63]

---

[59] *Id.,* a las págs. 746-771.
[60] *Id.,* a las págs. 798-799.
[61] *Id.,* a la pág. 772.
[62] *Id.,* a las págs. 773-795.
[63] *Id.,* a las págs. 796-797 y 800.

Insatisfecho aún, el 12 de febrero de 2024, la parte apelante presentó un recurso de *Apelación* ante esta Curia en el cual esbozó la comisión de dos (2) errores por parte del TPI:

> **Primer Error:** Erró el Honorable Tribunal de Primera Instancia al avalar el Cuaderno Particional final sin vista a pesar de que este incumple con la ley.

> **Segundo Error:** Erró el Honorable Tribunal de Primera Instancia al declarar no ha lugar la solicitud de remoción de albacea y las alegaciones de daños sin juicio y sin conclusión expresa del Comisionado Especial.

El 11 de abril de 2024, la señora Narváez Cintrón, por sí y en su carácter de Albacea, presentó el *Alegato de la Parte Apelada en Oposición a Recurso de Apelación*. Con la comparecencia de ambas partes procedemos a resolver el recurso ante nos.

## II

### A. Recurso de Apelación

La Regla 52.2 (a) de las Reglas de Procedimiento Civil[64], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[65] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[66] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.[67]
> […]

---

[64] 32 LPRA Ap. V, R. 52.2 (a).
[65] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000); *Arriaga v. FSE*, 145 DPR 122, 131 (1998); *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[66] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[67] 4 LPRA Ap. XXII-B, R. 13 (A).

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[68] En tal caso, el curso del término para apelar comienza a partir del archivo en autos copia de la notificación de la resolución que resuelve la moción.[69] Esto, a pesar de que se haya declarado la moción No Ha Lugar.

**B. Liquidación de la Sociedad Legal de Gananciales y de la Comunidad Hereditaria**

El profesor González Tejera ha expresado que: "Cuando el causante fuese casado, antes de realizar la liquidación de su herencia hay que proceder a separar sus bienes de los de su cónyuge, y en el caso de existir la sociedad legal de gananciales habrá también que liquidar dicha sociedad, según las reglas propias de la misma [...]".[70]

El Capítulo IV del Código Civil de 1930 regula la figura de la sociedad de gananciales.[71] En particular la Sección sexta de dicho Capítulo, regula lo concerniente a la disolución de la sociedad de gananciales. Así, las cosas, la sociedad de gananciales concluye cuando:

> La sociedad de gananciales concluye al disolverse el matrimonio en los casos señalados en este Título, cuando los cónyuges elijan, convengan y estipulen un régimen económico distinto mediante el otorgamiento de capitulaciones, quedando así disuelta la sociedad existente, en la forma prevenida en este Código, o al ser declarado nulo el matrimonio. En el caso de la disolución por mutación del régimen económico de la sociedad de gananciales existente, aquellos bienes sobre los cuales las partes no dispongan expresamente en la escritura de capitulaciones, se entenderán que permanecen en una comunidad de bienes en común pro indiviso hasta tanto ocurra la liquidación según dispuesto en este Código, incluyendo tanto los

---

[68] 32 LPRA Ap. V, R. 47.
[69] *Id.*
[70] E. González Tejera, Derecho Sucesorio Puertorriqueño, San Juan, Ed. Ramallo, 1983, Vol. I, pág. 368; *Méndez v. Ruiz Rivera*, 124 DPR 579, 587 (1989).
[71] El Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020 aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia que nos ocupa.

beneficios como las cargas. El cónyuge que por su mala fe hubiere sido causa de la nulidad no tendrá parte en los bienes gananciales.[72]
[...]

En nuestra jurisdicción, la SLG concluye al disolverse el matrimonio, ya sea por muerte de uno de los cónyuges, divorcio o nulidad.[73] "Al cesar la SLG se crea una Comunidad de Bienes Postganancial, la cual existirá hasta que sea liquidada o dividida".[74] No obstante, cuando coincidan una Comunidad de Bienes Postganancial y una Comunidad Hereditaria, procede liquidar en primer lugar la Comunidad de Bienes Postganancial y luego la Comunidad Hereditaria.[75]

Por su parte, la Sección séptima de dicho Capítulo, aborda lo concerniente a la liquidación de la sociedad de gananciales. En lo que respecta al inventario de los bienes se dispone que:

> Disuelta la sociedad, se procederá desde luego a la formación del inventario; pero no tendrá éste lugar para la liquidación:
> (1) Cuando disuelta la sociedad, haya renunciado a sus efectos y consecuencias en tiempo hábil, uno de los cónyuges o sus causahabientes.
> (2) Cuando a la disolución de la sociedad haya precedido la separación de bienes.
> (3) En el caso a que se refiere el párrafo segundo del Artículo anterior.[76]
> [...]

Sobre los bienes incluidos en el inventario se dispone que:

> El inventario comprenderá numéricamente, para colacionarlas, las cantidades que, habiendo sido pagadas por la sociedad de gananciales, deban rebajarse del capital del marido o de la mujer.
> También se traerá a colación el importe de las donaciones o enajenaciones que deban considerarse ilegales o fraudulentas, con sujeción al Artículo 1313.[77]

---

[72] 31 LPRA § 3681, Art. 1315.
[73] 31 LPRA § 301, Art. 95; *LSREF2 Island Holdings, Ltd. Inc. v. Ashford R.J.F. Inc.*, 201 DPR 1026, 1033 (2019); *BL Investment Inc. v. Registrador*, 181 DPR 5, 13 (2011).
[74] *LSREF2 Island Holdings, Ltd. Inc. v. Ashford R.J.F. Inc., Id.*, 1034; *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 982–983 (2010).
[75] *LSREF2 Island Holdings, Ltd. Inc. v. Ashford R.J.F. Inc., Id.*, 1035; *Méndez v. Ruiz Rivera, supra.*
[76] 31 LPRA § 3691, Art. 1316.
[77] 31 LPRA § 3692, Art. 1317.

Por su parte, el profesor González Tejera ha expresado que:

Para lograr una partición de herencia viable, es menester llevar a cabo varias operaciones previas, entre las cuales podemos mencionar la determinación del monto total del activo y *del pasivo sucesorio*, lo que requiere, a su vez, un inventario de todos los activos y pasivos, con su correspondiente avalúo. Una vez se obtenga este inventario, *se procederá a cobrar créditos y a pagar deudas, en ese* [*mismo*] *orden.* Concluida la etapa de liquidación, si el saldo final es positivo, se procede entonces a fijar el haber de cada heredero, de acuerdo con el texto del testamento o con la declaratoria de herederos, en la proporción que fije aquél o la ley.[78]

En su Capítulo VI, el Código de Enjuiciamiento Civil regula lo relacionado al inventario de la herencia. En dicho proceso, el primer paso consiste en la notificación de inventario:

Dentro de los diez (10) días de su nombramiento procederá el administrador o albacea a formar el inventario de los bienes muebles e inmuebles pertenecientes a la sucesión del finado, fijando al efecto un plazo de diez (10) días para que concurran los herederos y legatarios y sus legítimos representantes, si se hubieren personado en los autos, el cónyuge sobreviviente o su representación legítima, los acreedores que sean parte y los tutores especiales o defensores de los menores o personas incapacitadas.[79]

En lo que respecta a como se realizará el inventario se dispone que:

Hechas las citaciones [...], procederá el administrador, en presencia de un notario público o de los testigos acreditados, a formar el inventario de los bienes de la herencia, por el orden siguiente:
(1) Dinero.
(2) Efectos públicos.
(3) Títulos, hipotecas, acciones en sociedades anónimas, pagarés y demás documentos de crédito.
(4) Muebles, alhajas y prendas de vestir o de uso indispensable.
(5) Muebles fijos y semovientes.
(6) Frutos y cosechas.
(7) Bienes raíces e intereses en los mismos.
(8) Derechos y acciones no comprendidos en los enumerados.
(9) Libros, papeles, documentos y escrituras de especial importancia.[80]

---

[78] González Tejera, *op. cit.*, pág. 400; *LSREF2 Island Holdings, Ltd. Inc. v. Ashford R.J.F. Inc.*, *supra*, 1037.
[79] 32 LPRA § 2401, Art. 568.
[80] 32 LPRA § 2402, Art. 569.

Es importante destacar que, el inventario se hará bajo juramento con una descripción clara y precisa de los bienes comprendidos en las distintas clases, con expresión de su valor respectivo.[81] Ahora bien, en caso de disputa respecto al valor, el juez nombrará dos (2) peritos para que realicen dicha valoración.[82] Una vez se termine el inventario se entregará al secretario del TPI.[83]

### C. Legítima

El Capítulo II del Código Civil de 1930 aborda lo relativo al tema de la herencia.[84] La Sección quinta de dicho Capítulo contiene las disposiciones respecto a la legítima. La legítima es la porción de bienes de que el testador no puede disponer por haberla reservado la ley a determinados herederos, llamados por esto herederos forzosos.[85] A esos efectos, para fijar la legítima se atenderá al valor de los bienes que quedaren a la muerte del testador con deducción de las deudas y cargas, sin comprender entre ellas las impuestas en el testamento.[86] Por su parte, al valor líquido que los bienes hereditarios tuvieren, se agregará el que tenían todas las donaciones colacionables del mismo testador en el tiempo en que las hubiera hecho.[87]

### D. Albaceazgo

El Capítulo II del Código Civil de 1930 aborda lo relativo al tema de la herencia.[88] La Sección undécima de dicho Capítulo contiene las disposiciones referentes a la figura de albacea. Quien ejerza el cargo de albacea tendrá todas las facultades que

---

[81] 32 LPRA § 2403, Art. 570.
[82] *Id.*
[83] *Id.*
[84] El Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020 aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia que nos ocupa.
[85] 31 LPRA § 2361, Art. 735.
[86] 31 LPRA § 2372, Art. 746.
[87] *Id.*
[88] El Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020 aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia que nos ocupa.

expresamente le haya conferido el testador, y no sean contrarias a las leyes.[89]

Por su parte, el Código de Enjuiciamiento Civil dispone en cuanto a la aceptación del cargo de albacea que:

> Todo albacea que acepte el nombramiento hecho a su favor en un testamento deberá entregar al funcionario en cuya oficina se halla protocolado el testamento una aceptación del cargo por escrito, acompañada de un juramento, también por escrito, comprometiéndose a cumplir, del mejor modo que le fuere dable, sus obligaciones como albacea, sin lo cual no podrá hacerse cargo de los bienes del finado. La sala del Tribunal de Primera Instancia de la última residencia del finado o del lugar en que radican sus bienes, mediante la presentación de una certificación del notario u otro funcionario competente, en que conste haberse archivado dicha aceptación y juramento oficial, expedirá cartas testamentarias a favor del albacea, las cuales constituirán prueba de su autoridad. Tan pronto como un administrador haya prestado su fianza y juramento oficial, el juez o tribunal que lo hubiere nombrado expedirá a su favor cartas de administración bajo su sello, en testimonio de su autoridad.[90]

Entiéndase que, en nuestra jurisdicción ningún albacea facultado para administrar los bienes de una sucesión puede hacerlo sin que antes el tribunal expida las correspondientes cartas testamentarias.[91]

A tales efectos, quien ejerza el cargo de albacea deberá dar cuenta de su encargo a los herederos.[92] Cuando no habiendo el testador determinado especialmente las facultades de quien ejerza el cargo de albacea, tendrá las siguientes:

> (1) Disponer y pagar los sufragios y el funeral del testador con arreglo a lo dispuesto por él en el testamento; y en su defecto, según la costumbre del pueblo.
> (2) Satisfacer los legados que consistan en metálico, con el conocimiento y beneplácito del heredero.
> (3) Vigilar sobre la ejecución de todo lo demás ordenado en el testamento, y sostener, siendo justo, su validez en juicio y fuera de él.
> (4) Tomar las precauciones necesarias para la conservación y custodia de los bienes, con intervención de los herederos presentes.[93]

---

[89] 31 LPRA § 2520, Art. 823.
[90] Art. 597.
[91] *Vilanova v. Vilanova*, 184 DPR 824, 850 (2012).
[92] 31 LPRA § 2526, Art. 829.
[93] 31 LPRA § 2521, Art. 824.

Entre las facultades que ostenta quien ejerza el cargo de albacea se encuentra la presentación de cuentas trimestrales, y a tales efectos se dispone que:

> Los administradores y albaceas presentarán en el Tribunal de Primera Instancia cuentas trimestrales de las cantidades recibidas y desembolsadas por ellos, acompañadas de una declaración jurada y de un resguardo en que conste que el saldo en efectivo que de las mismas resulte queda depositado en el establecimiento bancario designado al efecto por el tribunal. Dichas cuentas serán puestas de manifiesto en secretaría a disposición de cualquiera de las partes.[94]

El ejercicio del cargo de albaceazgo termina por la muerte, imposibilidad, renuncia o remoción del albacea, y por el lapso del término señalado por el testador, por la ley, y en su caso, por los interesados.[95]

### E.  Figura del Contador-Partidor / Comisionado Especial

El Capítulo XIV, Artículos 600-605, del Código de Enjuiciamiento Civil regula lo concerniente a la división y partición de la herencia. Ante el nombramiento de un contador-partidor para practicar la división de la herencia, ya sea nombrado por el testador o por el foro primario, se le darán los datos necesarios para el avalúo, liquidación, división y distribución del caudal hereditario.[96] En lo relacionado a los deberes del contador-partidor se dispone que:

> El comisionado fijará día, hora y lugar para la división notificando al efecto a las partes interesadas. A la hora y en el lugar designados, y asistido por las partes, tendrá facultad para examinar testigos y peritos. Presentará una relación de los bienes partibles, con el avalúo de todos los comprendidos en ella, y en su informe, que deberá suscribir, indicará la manera equitativa y justa en que puede distribuirse el caudal entre los que tengan derecho a la sucesión, y si opinare que no es posible llevar a cabo tal división sin que medie una venta, hará constar esta circunstancia en su informe, y propondrá una venta judicial y la repartición del producto. Entregará su informe al secretario del tribunal y cualesquiera de las partes podrá pedir que se confirme, notificándole a las demás partes con ocho (8) días de anticipación. Si dentro de los ocho (8) días de

---

[94] 32 LPRA § 2511, Art. 587.
[95] 31 LPRA § 2529, Art. 832.
[96] 32 LPRA § 2622, Art. 601.

notificada la presentación del informe éste no fuere impugnado, el juez del Tribunal de Primera Instancia lo confirmará y ordenará que se proceda a la partición, división o distribución, de acuerdo con dicho informe. **Si se presentare la oposición al informe, cualquiera de las partes podrá pedir la vista ante el tribunal de los autos, dando de ello aviso a las demás con cinco (5) días de anticipación; y el juez, oídas las partes por medio de sus letrados, admitirá o desestimará las impugnaciones, confirmando o rechazando el informe, o devolviéndolo para que se enmiende**. Si se impugnare el informe por haber mediado soborno, conspiración, fraude o conducta reprochable en el procedimiento, y hubiere motivos fundados para creer justificada la acusación, el juez destituirá al comisionado, mandará que se entregue copia de los autos al fiscal del Tribunal de Primera Instancia para la instrucción del correspondiente proceso, y desechando el informe, nombrará otro comisionado para procederse a una nueva partición.[97] (Énfasis suplido).

Por su parte la Regla 41 de las Reglas de Procedimiento Civil aborda lo relativo a los comisionados especiales. El tribunal en el que esté pendiente un pleito o procedimiento podrá nombrar un comisionado/a especial en relación con dicho pleito o procedimiento.[98] Ahora bien, en cuanto a la encomienda de un comisionado especial en el TPI se dispone que esto será la excepción y no la regla.[99] No se encomendará el caso a un comisionado/a en ningún pleito, salvo cuando estén involucradas cuestiones sobre cuentas y cómputos difíciles de daños o casos que involucren cuestiones sumamente técnicas o de un conocimiento pericial altamente especializado.[100] En cuanto a los poderes que ostenta el comisionado especial se encuentran:

La orden para encomendar un asunto a un comisionado o comisionada especificará con particularidad sus poderes y requerirá que informe sobre determinadas cuestiones litigiosas solamente, que haga determinados actos o que solamente reciba prueba y transmita el expediente de ésta, y fijará un término razonable dentro del cual el comisionado o la comisionada deberá presentar su informe. Sujeto a las especificaciones y limitaciones establecidas en la orden, el comisionado o la comisionada tendrá y ejercitará el poder de regular los procedimientos en toda vista celebrada ante él o ella, y de realizar cualquier acto y tomar cualquier medida

---

[97] 32 LPRA § 2624, Art. 603.
[98] 32 LPRA Ap. V, R. 41.1.
[99] 32 LPRA Ap. V, R. 41.2.
[100] *Id.*

que sea necesaria o adecuada para el cumplimiento eficiente de sus deberes bajo la orden. Podrá exigir que se produzca ante él o ella cualquier prueba sobre todos los asuntos comprendidos en la encomienda, incluso la producción de todos los libros, papeles, comprobantes, documentos y escritos pertinentes. Podrá decidir sobre la admisibilidad de prueba, a menos que se disponga otra cosa en la orden de encomienda, tendrá la facultad de juramentar personas testigos y examinarlas, de citar las partes en el pleito y de examinarlas bajo juramento. Cuando una parte así lo requiera, el comisionado o la comisionada hará un expediente de la prueba ofrecida y excluida del mismo modo y sujeto a las mismas limitaciones dispuestas en las Reglas de Evidencia.[101]

En lo concerniente al informe, el comisionado especial deberá, si se le exige, hacer determinaciones de hechos y conclusiones de derecho las cuales expondrá en el informe.[102]

**III**

La parte apelante presentó ante esta Curia un recurso de *Apelación* en el cual esbozó la alegada comisión de dos (2) errores por parte del TPI. La parte apelante sostuvo que: (i) erró al avalar el Cuaderno Particional final sin vista, a pesar de que este incumplía con la ley; y que (ii) erró al declarar no ha lugar la solicitud de remoción de Albacea y las alegaciones de daños y perjuicios, sin la celebración de un juicio en su fondo y sin conclusión expresa del Comisionado Especial.

El Causante falleció el 15 de marzo de 2012, habiendo otorgado Testamento mediante la Escritura Número 10, el 12 de noviembre de 2008. El Causante contrajo matrimonio con la señora Narváez Cintrón el 3 de agosto de 1968, y en ausencia de capitulaciones se presume se casaron bajo SLG. En lo que respecta a la administración del caudal, el Causante nombró Albacea a la señora Narváez Cintrón sin remuneración y sin la obligación de prestar fianza, concediéndole las facultades necesarias para cumplir con el mandato contenido en el Testamento por el tiempo que fuese

---

[101] 32 LPRA Ap. V, R. 41.3.
[102] 32 LPRA Ap. V, R. 41.5 (a).

necesario. Además, facultó a la Albacea para vender, hipotecar, arrendar o enajenar los bienes inmuebles, derechos reales, bienes muebles, acciones o valores que fueran parte de la herencia, para pagar las deudas que hubiere y cobrar las cuentas que le adeudaran al Causante. Como parte del Testamento, el Causante prohibió colacionar cualquier donación hecha.

El 14 de noviembre de 2012, la señora Narváez Cintrón presentó la *Demanda* en el caso D AC2012-3318, en la cual solicitó que se liquidase la herencia del Causante y la SLG que esta conformó con el primero. Además, alegó que había seguido pagando las deudas del caudal, inclusive que, con dinero privativo de ésta, había efectuado pagos a las hipotecas y préstamos que estaban activos. Nótese que, nuestra jurisdicción, la SLG concluye al disolverse el matrimonio, lo cual puede suceder por la muerte de uno de los cónyuges.[103]

Por su parte, el 4 de diciembre de 2012, el señor Manuel Chinea, por sí y en representación de sus dos (2) hijos Zavier Chinea y Zulimar Chinea, presentó una *Demanda* en el caso D AC2012-3530, en la cual solicitó que se ordenara la división de la comunidad hereditaria, y se requiriera el inventario, avalúo, liquidación y pago del caudal hereditario en la proporción correspondiente. Debemos recordar que, al cesar la SLG se crea una Comunidad de Bienes Postganancial, la cual existirá hasta que sea liquidada o dividida.[104] Por consiguiente, cuando coincidan una Comunidad de Bienes Postganancial y una Comunidad Hereditaria, procede liquidar en primer lugar la Comunidad de Bienes Postganancial y luego la Comunidad Hereditaria.[105]

---

[103] 31 LPRA § 301, Art. 95 *LSREF2 Island Holdings, Ltd. Inc. v. Ashford R.J.F. Inc.*, *supra*, 1033; *BL Investment Inc. v. Registrador, supra.*
[104] *LSREF2 Island Holdings, Ltd. Inc. v. Ashford R.J.F. Inc.*, *Id.*, 1034; *Muñiz Noriega v. Muñoz Bonet, supra.*
[105] *LSREF2 Island Holdings, Ltd. Inc. v. Ashford R.J.F. Inc.*, *Id.*, 1035; *Méndez v. Ruiz Rivera, supra.*

También, en la *Demanda* presentada por el señor Manuel Chinea, alegó que la señora Narváez Cintrón no había realizado los actos necesarios para legalizar y obtener del TPI la autoridad requerida para llevar a cabo los actos de administración de la herencia, ya que no había solicitado la expedición de las Cartas Testamentarias, por lo que estaba haciéndolo de forma ilegal y contraria a derecho, sin tan siquiera haber citado para la lectura del Testamento. Añadió que, la señora Narváez Cintrón había evadido su obligación de rendir informes financieros de los negocios que llevaba a cabo y demás actividades que realizaba a nombre de la Sucesión. Expuso que, tampoco se formalizó un inventario de los bienes que componen el caudal, bajo juramento. Puntualizamos, que el caso D AC2012-3530 se consolidó con el caso D AC2012-3318.

El 27 de junio de 2013, la señora Narváez Cintrón sometió un Cuaderno Particional provisional. El 19 de mayo de 2014, el señor Manuel Chinea, por sí y en representación de sus dos (2) hijos, presentó una *Moción Informativa en Cumplimiento de Orden* en la cual solicitó que, dado a los incumplimientos en el ejercicio del cargo de Albacea, la señora Narváez Cintrón fuera removida. Consecuentemente, solicitó que en sustitución de la Albacea se nombrara un Administrador Judicial para que se incautaran todos los bienes de la Sucesión y se administraran hasta que se liquidara la herencia. El 23 de mayo de 2014, la señora Narváez Cintrón sometió ante el Tribunal un Cuaderno Particional final. El 27 de mayo de 2014, se celebró una vista y en la *Minuta* el Tribunal hizo constar que la Albacea no había provisto los informes mensuales y trimestrales ordenados.

El 14 de marzo de 2016, el TPI emitió una *Orden Designando Contador-Partidor / Comisionado Especial.* Conviene destacar que, en dicha *Orden,* el Tribunal expresó que el caso de autos presentaba

complejas controversias tanto de naturaleza contable como de derecho. Entre las tareas asignadas se encontraban:

1. Realizar un listado de activos y pasivos de bienes de la SLG compuesta por la señora Narváez Cintrón y el Causante, así como del caudal hereditario de la Sucesión.
2. Realizar el avalúo y adjudicación del caudal hereditario de la Sucesión.
3. Disponer de los créditos y débitos de la comunidad de bienes compuesta por la señora Narváez Cintrón y el Causante.
4. Dirigir el descubrimiento de prueba.
5. Recibir prueba testifical y documental.
6. Decidir sobre la admisibilidad de evidencia y adjudicar su credibilidad.
7. Solicitar la presentación de memorandos.
8. Someter un informe escrito con determinaciones de hechos y conclusiones de derecho al amparo de la Regla 41.5 de las Reglas de Procedimiento Civil.
9. Resolver aspectos parciales o interlocutorios y hacer determinaciones sobre las controversias que considere deben resolverse preliminarmente.

Acentuamos que, para lograr una partición de herencia viable, es menester llevar a cabo varias operaciones previas como la determinación del monto total del activo y del pasivo sucesorio, lo que requiere un inventario de todos los activos y pasivos con su correspondiente avalúo.[106] Una vez se obtenga el inventario a tenor con los Artículos 568-569 del Código de Enjuiciamiento Civil, se procederá a cobrar créditos y a pagar deudas, en dicho orden.[107] Una vez concluida la etapa de liquidación, si el saldo final es positivo, se procede entonces a fijar el haber de cada heredero, de acuerdo con el texto del testamento.[108]

El 17 de noviembre de 2020, el CPA Jiménez Viñas, quien sustituyó al CPA Torres como Contador Partidor, presentó una *Moción Sometiendo Cuaderno Particional*. El 15 de marzo de 2023, el Contador Partidor presentó una *Moción Sometiendo Cuaderno Particional Final*. Debemos reiterar que, en lo concerniente al valor

---

[106] González Tejera, *op. cit.*, pág. 400; *LSREF2 Island Holdings, Ltd. Inc. v. Ashford R.J.F. Inc.*, *supra*, 1037.
[107] *Id.*
[108] *Id.*

comercial de Vivó Auto Parts, indicó que el inventario nunca se realizó.

Recibido el antes aludido escrito, el 16 de noviembre de 2023, notificada el 6 de diciembre de 2023, el TPI emitió una *Sentencia* en el caso D AC2012-3318 en la cual adoptó el Cuaderno Particional final presentado por el Contador Partidor. En consecuencia, ordenó la división y partición de los bienes del caudal de conformidad a lo dispuesto por el Contador Partidor en dicho Cuaderno Particional. Además, declaró No Ha Lugar la solicitud del señor Manuel Chinea para la destitución de la Albacea y liquidación del negocio Vivó Auto Parts. El 21 de diciembre de 2023, la parte apelante presentó una *Moción de Reconsideración de Sentencia,* la cual fue denegada.

Con este preámbulo en mente, procederemos a discutir el *primer* error. La parte apelante esboza que, erró el foro primario al avalar el Cuaderno Particional final sin celebrar una vista, a pesar de que presuntamente incumplía con la ley. Adelantamos que dicho error fue cometido por el TPI. Veamos.

Sabido es que una orden para encomendar un asunto a un comisionado especial especificará con particularidad sus poderes y requerirá que informe sobre determinadas cuestiones litigiosas solamente y que haga determinados actos, y fijará un término razonable dentro del cual el comisionado o la comisionada deberá presentar su informe.[109] Sujeto a las especificaciones y limitaciones establecidas en la orden, el comisionado especial tendrá y ejercitará el poder de regular los procedimientos en toda vista celebrada ante él, y de realizar cualquier acto y tomar cualquier medida que sea necesaria o adecuada para el cumplimiento eficiente de sus deberes.[110]

---

[109] 32 LPRA Ap. V, R. 41.3.
[110] *Id.*

En el presente caso, el Contador-Partidor estaba investido del cargo de Comisionado Especial para ejercer una función dual, por lo que debió celebrar una vista para que las partes presentaran su evidencia. Resultaba evidente que en el caso en cuestión existían controversias de hecho entre las partes que debían ser dirimidas. Debemos señalar, que, de igual forma, este no cumplió con lo mandatado en la Orden en la que se le designó como Comisionado Especial, ya que, al rendir el Cuaderno Particional, no presentó un informe con determinaciones de hechos y conclusiones de derecho al amparo de la Regla 41.5 de las Reglas de Procedimiento Civil. En lo concerniente al informe, el comisionado especial deberá, si se le exige, hacer determinaciones de hechos y conclusiones de derecho las cuales expondrá en el informe.[111] Es por todo lo anterior que razonamos que el *primer* error fue cometido.

En cuanto al *segundo* error, la parte apelante esboza que, erró el foro primario al declarar No Ha Lugar la solicitud de remoción de la Albacea y las alegaciones de daños y perjuicios sin celebrar un juicio en su fondo y sin conclusión expresa del Comisionado Especial. Colegimos que dicho error también fue cometido por el TPI. Elaboramos.

La señora Narváez Cintrón fue nombrada Albacea por el Causante en su Testamento, para ejecutar o vigilar la ejecución de su última voluntad. Bajo nuestro marco doctrinal, ningún albacea facultado para administrar los bienes de una sucesión puede hacerlo sin que antes el tribunal expida las correspondientes cartas testamentarias.[112] **La persona que ejerza el cargo de albacea deberá dar cuenta de su encargo a los herederos**.[113] (Énfasis suplido). Entre las facultades que tiene la persona que ejerza el

---

[111] 32 LPRA Ap. V, R. 41.5 (a).
[112] *Vilanova v. Vilanova, supra.*
[113] 31 LPRA § 2526, Art. 829.

cargo de albacea se encuentra tomar las precauciones necesarias para la conservación y custodia de los bienes.[114]

El Artículo 832 del Código Civil de 1930, enumera las causas que dan lugar a la terminación del albaceazgo, incluyendo entre ellas la remoción de la persona que ejerce el cargo de albacea.[115] Sin embargo, dicho artículo guarda silencio en cuanto a las razones para la remoción.[116] Ahora bien, en cuanto a la jurisprudencia española, Albaladejo en su obra El Albaceazgo en el Derecho Español (1969) expresa que:

> En definitiva, resumiendo: el T.S. en su jurisprudencia ha dicho que son causas de remoción:
> 1a. Las que incapacitan para el desempeño del cargo […].
> 2a. Las que incapacitan para el ejercicio de los derechos civiles […].
> 3a. La conducta dolosa en el desempeño de su misión […].
> 4a. El uso malicioso (en perjuicio de los llamados a la herencia) de facultades que no les asistan […].
> 5a. **La negligencia y la mala administración que** (aun admitiendo que el cargo se concediese por el tiempo necesario para cumplir el testamento) **supone estar un plazo excesivo** (treinta y tres años) **sin ni siquiera haber formalizado el inventario** y tasación de los bienes relictos […].[117] (Énfasis suplido).

Por otro lado, el profesor González Tejera nos señala que: "El albacea responde por abandono de sus deberes, desidia, mala administración, apropiación indebida de los bienes del caudal, dolo, malicia, gastos innecesarios o injustificados, litigios temerarios, negligencia, mala administración, demora injustificada en la entrega de los bienes, etc.".[118] Es por esto que, el desempeño de quien ejerce el cargo de albacea requiere la diligencia de un buen padre de familia.[119] Así, pues, una vez se determina la responsabilidad del albacea, este viene obligado a responder como cualquier deudor; ya

---

[114] 31 LPRA § 2521, Art. 824 (4).
[115] 31 LPRA § 2529, Art. 832. *Alejandro v. Tribunal Superior*, 100 DPR 600, 608 (1972).
[116] *Alejandro v. Tribunal Superior, Id.*
[117] *Id.*, 609.
[118] *Ex parte González Muniz*, 128 DPR 565, 573 (1991).
[119] 31 LPRA § 3021, Art. 1057. *Ex parte González Muniz, Id.*, 572.

que, sus actuaciones generan una obligación de indemnizar a los herederos y demás causahabientes por todos los perjuicios causados.[120]

En el caso del título es claro que el foro primario actuó sin haber recibido el insumo del Comisionado Especial. Más aún, siendo palpables las controversias entre las partes, las mismas debieron ser dilucidadas en una vista de forma tal que ambas partes pudiesen colocar al Comisionado Especial en posición, cosa que tampoco ocurrió.

**IV**

Por los fundamentos que anteceden, *revocamos* la *Sentencia* apelada. En consecuencia, se devuelve el caso al foro primario para que el Contador-Partidor/Comisionado Especial celebre una vista y, producto de esta, emita un informe al Tribunal de Primera Instancia que cumpla con lo requerido en la *Orden* del 14 de marzo de 2016 y con la Regla 41.5 de las Reglas de Procedimiento Civil. Además, en dicha vista el Contador-Partidor/Comisionado Especial dirimirá la controversia relacionada a la solicitud sobre remoción de la señora Narváez Cintrón del cargo de Albacea.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[120] *Ex parte González Muniz, Id.*, 573.